FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

In re:                                                      Bankruptcy Case No. 21-12725

Eric S. Gilbert                                             Chapter 7

        Debtor
-------------------------------------------------------------X

John M. McDonnell

        Plaintiff

vs.                                                         Adversary No. 22-1005

Eric S. Gilbert                                             **MEMORANDUM OPINION**

        Defendant

-------------------------------------------------------------X

<u>APPEARANCES</u>

**<u>Counsel for Movant – Debtor/Defendant, Eric S. Gilbert</u>**
Andrea Dobin, Esquire
Michele M. Dudas, Esquire
McManimon Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611

**<u>Counsel for Plaintiff, John M. McDonnell</u>**
Richard J. Corbi, Esquire
Law Office of Richard J. Corbi, PLLC
1501 Broadway, 12th Floor
New York, NY 10036

Brian Thomas Crowley, Esquire
McDonnell Crowley, LLC
115 Maple Avenue
Red Bank, NJ 07701

The question before the court in this adversary proceeding is whether the
Chapter 7 trustee can use the funds in the Debtor's retirement account to pay
creditors. Eric S. Gilbert filed a Chapter 7 bankruptcy petition on April 1, 2021. In
that petition, he listed his interest in two retirement accounts. In Schedule A/B he
listed a 401(a) account held by Voya Financial with a balance of $1,607,536.99. The
Debtor also listed a 401(k) account held by Voya Financial with a balance of
$47,031.48. The fundamental legal issue underlying all the counts of this complaint
is whether those accounts are property of the bankruptcy estate.

<u>Procedural History</u>

In January 2022, the Trustee filed a complaint against the Debtor and his ex-
spouse Julia Gilbert seeking, among other relief, a declaratory judgment that the
funds contained in the Debtor's retirement accounts are property of the estate. Both
defendants filed motions to dismiss. The court granted Julia Gilbert's motion and
dismissed the claims against her with prejudice.[1] The court granted the Debtor's
motion in part and permitted the Trustee to file an amended complaint.[2]

The Trustee filed his First Amended Complaint[3] on March 10, 2022. Similar
to the initial complaint, the Amended Complaint seeks a declaratory judgment, an
injunction, and the recovery of money or property. The Debtor now moves to dismiss

---

[1] Doc. 26. That order has not been appealed.
[2] Doc. 30
[3] Doc. 32

all counts of the Amended Complaint. The court took oral argument on June 21,

2022, and issues these proposed findings of fact and conclusions of law.

Discussion

Count One

Count One of the Amended Complaint is premised on 11 U.S.C. § 541 and is

titled "Declaration that the Debtor's Retirement Funds Are Not [sic] Property of the

Estate." As previously noted, there are two retirement plans at issue in this case.

One is the Debtor's interest in the PSSoL Defined Benefit Plan [401(a)] ("DB Plan")

and the other is the Debtor's interest in the PSSoL 401(k) Plan ("401(k) Plan"). This

adversary proceeding centers on whether the Debtor's retirement accounts are

either excluded from property of the bankruptcy estate under 11 U.S.C. § 541 or are

property of the estate but may be exempted under 11 U.S.C. § 522. This central

issue directly implicates every count of the Amended Complaint.

 For the first time, the Debtor has asked this court to determine whether the

retirement accounts are excluded from property of the estate based on 11 U.S.C. §

541(c)(2) and the holding in *Patterson v. Shumate*.[4] Until now, the parties' focus has

been on whether the retirement plans are exempt under 11 U.S.C. § 522(d)(12),

which focuses on the tax qualification of the retirement plans per 11 U.S.C. §

522(b)(4).

Despite directly putting the § 541 property of the estate question at issue in

Count One, the Trustee objects to what he characterizes as the Debtor's "last

---

[4] 504 U.S. 753 (1992)

minute change in strategy."[5] It is inaccurate to characterize the Debtor's position as

a last-minute change of strategy. The Debtor noted in his bankruptcy petition that

the retirement accounts are not property of the estate. This is simply the first time

this court has been asked to rule on whether these retirement accounts are properly

excluded from the estate. In Schedule A/B of his bankruptcy petition, the Debtor

lists both his DB Plan and his 401(k) Plan with the notation "*not property of the

estate." In Schedule C of his bankruptcy petition, the Debtor again lists the

accounts with the notation "*not property of the estate," but also declares the

accounts exempt pursuant to § 522(d)(12). There is nothing improper about that

strategy; it is an indication that the Debtor believes the accounts are not property of

the estate, but if the court rules that the accounts are property of the bankruptcy

estate that the Debtor is exempting them.

 The Trustee further asserts that "the Debtor believes that a state law

exemption applies and the case is simply over with a hypnotical [sic] amendment."[6]

It is unclear to the court what type of amendment the Trustee believes is required

before the Debtor can assert this legal defense to the declaratory judgment cause of

action asserted in Count One. If the Trustee's statement refers to a need to amend

the petition to claim the state rather than the federal exemptions, then the

Trustee's position is legally incorrect. The Debtor's argument under § 541(c)(2) does

not concern exemptions at all; rather a determination of what property is included

within the umbrella of property of the bankruptcy estate as determined by § 541.

---

[5] Trustee Brief at 2 [Doc. 41]
[6] *Id.*

4

That determination is entirely distinct from the determination of whether property (once found to be property of the estate) may then be exempted from the estate and not made available for the payment of creditors. The Debtor's alternative argument that N.J.S.A. § 25:2-1(b) (rather than ERISA) may provide the restriction on transfer required by § 541(c)(2) is not the same thing as claiming the state rather than federal exemptions. It is simply providing an alternative "applicable nonbankruptcy law." It is disquieting that at many points in the Trustee's complaint and brief he fails to recognize these crucial distinctions.

In Count One, the only legal citation is to 11 U.S.C. § 541(d). That citation is perplexing because that section addresses property to which a debtor has bare legal title but no equitable interest (for example, a mortgage for which the debtor is merely the servicer.) Not once in the 67-page brief in opposition to this motion does the Trustee mention § 541(d). Therefore, the court must assume that the Trustee has abandoned any argument under that Code section. The remainder of Count One focuses on alleged operational improprieties regarding the retirement accounts and concludes that "the Retirement Accounts are not proper exemptions and thus, are property of the Debtor's estate."[7]

That argument skips the crucial initial determination of whether the retirement accounts are property of the estate at all. Exemptions under § 522 *remove* certain assets from the bankruptcy estate that are deemed necessary post-

---

[7] Amended Complaint at 43

bankruptcy for a debtor to have a fresh start and not be destitute.[8] The factual

issues[9] raised in the Amended Complaint all pertain to whether the retirement

accounts were maintained in compliance with ERISA and the IRC. Whether these

accounts were maintained in compliance with federal law is relevant only to the

exemption issue, thus it only comes into play if the court finds that the accounts are

property of the bankruptcy estate. When questioned at oral argument, Trustee's

counsel agreed that the property of the estate issue was a pure legal issue[10] capable

of determination at this stage.[11]

Section 541 of the Bankruptcy Code broadly includes within property of the

estate "all legal or equitable interest of the debtor in property as of the

commencement of the case."[12] There are certain exclusions from its broad sweep

and the exclusion at issue here is contained in § 541(c)(2). That section provides

that an interest of the debtor in property becomes property of the estate *except* if a

"restriction on the transfer of a beneficial interest of the debtor in a trust that is

enforceable under applicable nonbankruptcy law is enforceable in a case under this

title."

---

[8] For example, section 522(d)(6) allows a debtor to exempt tools of a trade up to a specified
dollar value.

[9] On a Rule 12(b)(6), a court is "required to accept as true all allegations in the complaint
and all reasonable inferences that can be drawn from them after construing them in the
light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d
153, 154 n. 1 (3d Cir. 2014)

[10] On a Rule 12(b)(6) motion, a court should "disregard legal conclusions and recitals of the
elements of a cause of action supported by mere conclusory statements." *Davis v. Wells
Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)

[11] Doc. 43 at 9-10 [Transcript of hearing on June 21, 2022]

[12] 11 U.S.C. § 541(a)(1)

Several elements must be satisfied for the § 541(c)(2) exclusion from property of the estate to apply. First, the Debtor must have a beneficial interest in a trust. The typical elements of a trust under nonbankruptcy law are: (1) a trust res; (2) a beneficiary; and (3) a trustee obligated to administer the res for the benefit of the beneficiary.[13] For purposes of this analysis, the court must look at each plan individually. A "trust res" is established in the DB Plan document in Section 1.67, which defines "Trust Fund" to mean "the assets of the Plan and Trust as the same shall exist from time to time." Similarly, the governing document for the 401(k) Plan defines a "Trust Fund" as "[a]ll money and property of every kind and character held by the Trustee pursuant to the Plan." Next, there is a beneficiary of the trust because the Debtor at all times was a beneficiary of both retirement accounts. Finally, both retirement plans designate a trustee to administer the accounts.[14] Accordingly, the court finds that the first element is satisfied because the retirement accounts are trusts and the Debtor has a beneficial interest in them.

The next element needed for the § 541(c)(2) exclusion from property of the estate to apply is that there is a restriction on transfer. Both retirement plan documents contain anti-alienation provisions that restrict the ability of the owner to transfer an interest. For the DB Plan, this restriction is contained in paragraph 12.22. In the 401(k) Plan, the anti-alienation provision is found in paragraph 3.13.6.

---

[13] *In re Bayer*, 521 B.R. 491, 507 (Bankr. E.D. Pa. 2014)
[14] The Trustee argues that the fact that the Debtor is the administrator of the retirements accounts makes them not ERISA-qualified, but that argument is not relevant to the issue of whether a trust exists.

The final element needed for the § 541(c)(2) exclusion from property of the estate to apply is that the restriction on transfer is enforceable under applicable nonbankruptcy law. The Supreme Court held in *Patterson* that ERISA is "applicable nonbankruptcy law." Arguably, this could be the end of the analysis; however, the Trustee argues that it is not enough that a restriction is enforceable under ERISA, it must also be enforceable under the Internal Revenue Code.[15]

To address the Trustee's position, the court must recount a bit of the history of the law in this area. A common early interpretation of the § 541(c)(2) exclusion from property of the estate was that it applied only to spendthrift trusts qualified under state law. That interpretation was rejected by the Third Circuit in *Velis v. Kardanis*.[16] The *Velis* court "concluded that the restrictions which must be recognized in bankruptcy under § 541(c)(2) are not limited to state spendthrift-trust law, but include restrictions enforceable under either state or federal law."[17] A year later, the Supreme Court in *Patterson v. Shumate* reached the same conclusion finding that that "applicable nonbankruptcy law" is not limited to state law.[18] The *Patterson* court specifically found that the anti-alienation provisions required to be in any plan that qualifies for ERISA satisfy the literal terms of § 541(c)(2). The court noted that § 206(d)(1) of ERISA[19], which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated,"

---

[15] That precise issue has not been addressed by the United States Supreme Court or the Third Circuit Court of Appeals.
[16] 949 F.2d 78 (3d Cir. 1991)
[17] *Id.* at 83
[18] 504 U.S. 753, 759 (1992)
[19] 29 U.S.C. § 1056(d)(1)

clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust.[20]

Following the *Patterson* decision, the caselaw in this area has broken down along two lines: those that find that a retirement plan must not only contain the anti-alienation provisions required by ERISA, but must also comply with all tax regulations, and those that find that compliance with ERISA's anti-alienation requirements is sufficient. In other words, does the term "ERISA-qualified," as used by the Court in *Patterson,* mean "tax-qualified." This court aligns with the cases that hold that ERISA's anti-alienation requirements are sufficient to provide the required restriction on transfer.

Initially, the court finds that the answer is in the plain language of § 542(c)(2). There is simply nothing in § 542(c)(2) that requires the court to look beyond whether there is an enforceable restriction on transfer and delve into whether the plans comply with the Internal Revenue Code. The Trustee would have this court rewrite § 542(c)(2) to read: A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law *and is maintained pursuant to ERISA and the IRC* is enforceable in a case under this title. This court is both unwilling and unauthorized to do so. This court is "bound by the language of the statute as it is written" even if the position advocated by the Trustee is arguably better policy.[21]

---

[20] *Patterson* at 759
[21] *Commissioner v. Lundy*, 516 U.S. 235, 252 (1996)

When Congress wants courts to consider tax qualification it knows how to do so — for example, sections 522(d)(12) and 522(b)(4) explicitly reference taxation and a favorable tax determination. In 2005 as part of BAPCPA, Congress added § 522(d)(12) as a new exemption provision for tax-exempt retirement funds . At that time, Congress could have also changed the language of § 541(c)(2) to add taxation language, but it did not. This court must read the Bankruptcy Code as written not as it might have been written.

Even more to the point, Congress amended § 541 itself in 2005 and yet still did not change the language of § 541(c)(2). Congress added a new section, 11 U.S.C. § 541(b)(7), that excludes from property of the estate amounts withheld by an employer for contributions to an employee benefit plan that is subject to title I of ERISA or employee benefit plans subject to various provisions of the Internal Revenue Code. The addition of § 541(b)(7) to the Bankruptcy Code is significant to this analysis for two reasons: 1) it separately mentions an employee benefit plan that is subject to ERISA and plans that are subject to the IRC, demonstrating that Congress understood the distinct nature of the two statutory schemes; and 2) with that knowledge (and the presumptive knowledge of the varying interpretations of *Patterson* in the intervening 13 years) Congress did not amend § 541 to include a reference to the IRC.

Any operational defects in the Debtor's retirement plans (and for the purposes of a Rule 12(b)(6) motion the court must assume that the defects alleged in the Amended Complaint exist) have no bearing on a plain meaning reading of §

10

541(c)(2).[22] Time and again the Supreme Court has instructed that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[23] A reading of section 542(c)(2) that excludes from the bankruptcy estate any retirement plan that contains ERISA's required anti-alienation provisions is self-evidently not absurd or the Supreme Court would not have ruled as it did in *Patterson*.

This court is in complete agreement with the explanation of the *Patterson v. Shumate* decision by the bankruptcy court in *In re Handel*.[24] As that court explained:

> *Shumate* relied first and foremost on the plain meaning of section 541(c)(2) of the Bankruptcy Code and the fact that the plan at issue had an alienation prohibition that was, consistent with section 541(c)(2), enforceable under ERISA. Therefore, the Court's reference to the "coordinate" anti-alienation provision of IRC § 401(a)(13) and the close relationship between ERISA and the favorable tax treatment afforded some ERISA plans under the IRC, while supportive of *Shumate*'s holding, was not necessary for that holding. Instead, adding a requirement that a plan subject to ERISA's prohibition of alienation also must be tax-qualified under IRC § 401(a) before it is excluded from the estate would violate the plain language of section 541(c)(2). It would mean that a prohibition of alienation must be enforceable under not one but, rather, two applicable laws, which is not what section 541(c)(2) says.[25]

---

[22] *Priv. Cap. Invs., LLC v. Schollard*, 2014 WL 2587721, at *4 (W.D.N.Y. June 10, 2014) ("Unlike IRC qualification, violations in the operation of a plan do not vitiate enforcement of ERISA's anti-alienation prohibition and there are no equitable exceptions to enforcement of ERISA's anti-alienation prohibition.")

[23] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)

[24] 301 B.R. 421 (Bankr. S.D.N.Y. 2003)

[25] *Id.* at 432–33

The fact that the plan at issue in *Patterson v. Shumate* was apparently tax-qualified was not the focus of the Court's decision because it did not need to be. Once one nonbankruptcy law (ERISA) provided the enforcement of a restriction on transfer there was no reason to look for another nonbankruptcy law (IRC).

The Trustee is certainly correct that the *Patterson* court was not presented with the precise question of "whether a retirement plan which facially is an ERISA-qualified Plan, but which is not operated in conformity with the operational requirements of the tax exemption provision of the Internal Revenue Code, 26 U.S.C. § 401, would come within the term 'applicable non-bankruptcy law.'"[26] The fact that the *Patterson* court did not address that question does not invalidate the holding. In the fact section of the case, the *Patterson* court noted that the plan at issue "satisfied all applicable requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and qualified for favorable tax treatment under the Internal Revenue Code." However, those facts were unquestionably not the focus of the Court's analysis. The case was decided based on the "plain language of the Bankruptcy Code," and the holding was not limited to plans that satisfy all requirements of EIRSA <u>and</u> qualify for favorable tax treatment.[27] Importantly for the case before this court, the Supreme Court has resolutely refused to recognize any bad faith exception to ERISA's anti-alienation provisions even for "employee

---

[26] The question as stated by the Trustee was clearly answered by *Patterson* – ERISA is applicable nonbankrutpcy law. The court surmises that the argument that Trustee intended to make with that statement is that *Patterson* did not address whether the anti-alienation provision ("restriction on the transfer") in an ERISA plan with operational defects is still *"enforceable"* under applicable nonbankruptcy law."

[27] *Patterson* at 757

malfeasance or for criminal misconduct," and held that only Congress could create such an exception.[28]

Although this court thinks that the analysis starts and stops with the wording of the statute itself and the holding in *Patterson v. Shumate*, it will address the post-*Patterson* cases cited by the parties. In *McBride*, the court addressed the question of whether after-tax contributions to an ERISA-qualified plan are property of the estate.[29] The court concluded that the contributions were excluded from the bankruptcy estate pursuant to § 541(c)(2) and *Patterson v. Shumate* and that it was immaterial if the plan was tax qualified. As noted in *McBride*, all Court of Appeals decisions have concluded that a plan with the anti-alienation provisions required by ERISA does not become property of the estate.[30] One of those cases was *In re Meehan*, in which the Eleventh Circuit determined that analyzing state spendthrift trust law is not relevant because even where a debtor has significant control and access to assets in a savings plan, the savings plan may be excluded from the bankruptcy estate if the savings plan is non-alienable.[31]

---

[28] *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990) (court held that funds in an ERISA account obtained by embezzlement from a union were still not property of the bankruptcy estate)

[29] *In re McBride*, 347 B.R. 585 (Bankr. S.D. Tex. 2006)

[30] *See, e.g., Rupp v. Kunz (In re Kunz)*, 309 B.R. 795 (10th Cir. BAP 2004), aff'd, 124 Fed. Appx. 597 (10th Cir. 2005); *Nelson v. Ramette (In re Nelson)*, 274 B.R. 789 (8th Cir. BAP 2002), *aff'd*, 322 F.3d 541 (8th Cir. 2003); *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209 (11th Cir. 1997); *Barkley v. Conner (In re Conner)*, 73 F.3d 258 (9th Cir.1996)

[31] *Meehan*, 102 F.3d at 1213–14

Several cases have discussed how the Supreme Court's use of the term "ERISA-qualified" in *Patterson* has bedeviled later courts. The bankruptcy court *In re Handel*[32] noted that "ERISA-qualified" is not a term of art and has no technical meaning. The court explained that a plan can be subject to ERISA and it can be tax qualified, but there are no "ERISA-qualified" plans. In another case discussing the confusion that term has engendered, the bankruptcy court in *Meinen* ultimately concluded that "as a legal matter, an interest in a pension plan that is subject to, or governed by, ERISA, and which also contains an anti-alienation clause as required pursuant to ERISA § 206(d)(1), is excluded from property of a bankruptcy estate pursuant to § 541(c)(2) regardless of whether said pension plan is also tax-qualified."[33] This court agrees with the reasoning expressed in those cases.  For purposes of § 541(c)(2) it only matters that the plan at issue be subject to ERISA and contain an anti-alienation clause as required by § 206(d)(1) of ERISA.[34]

The Trustee urges this court to follow post-*Patterson* cases that have held that to be excluded from the bankruptcy estate a so-called ERISA-qualified plan must also be maintained in accordance with § 401 of the Tax Code. The Trustee goes even further and states that this court is required to rule in his favor based on an unpublished decision from the District Court for the District of New Jersey in

---

[32] 301 B.R. 421 (Bankr. S.D.N.Y. 2003)
[33] *In re Meinen*, 228 B.R. 368, 380 (Bankr. W.D. Pa. 1998)
[34] *See generally*, *In re Bell*, 476 B.R. 168, 171 (Bankr. E.D. Pa. 2012) (parties agreed that Debtor's interest in the 401(k) account is not part of the bankruptcy estate under 11 U.S.C. § 541(c)(2))

*First Indem. of Am. Ins. Co. v. Copulos.*[35] That position misapprehends the concept

of *stare decisis*. This court is bound to follow decisions of the Third Circuit Court of

Appeals and the United States Supreme Court, but not decisions of the District

Court for the District of New Jersey of which it is a unit. The Third Circuit has

noted that there is no such thing as a "law of the district" and that the doctrine of

*stare decisis* does not compel one district court judge to follow the decision of

another.[36] Logically, the same would hold true for a bankruptcy court judge.

Even if the *Copulos* decision were binding on this court, it does not compel

the outcome the Trustee seeks. This court's conclusion that the retirement accounts

at issue in this case are not property of the estate stems from the plain language of

§ 541(c)(2) and the holding in *Patterson*. That conclusion is not premised on the

restriction on transfer available under New Jersey law. Judge Brown's decision in

*Copulos* interpreted the phrase "qualifying trust" under N.J.S.A. § 25:2-1(b).

Because the New Jersey statute defines the term "qualifying trust" as a "trust

created or qualified *and maintained* pursuant to federal law," (emphasis added)

Judge Brown concluded that the bankruptcy court must look not only to whether

the trust was qualified and maintained under ERISA but also section 401 of the

Internal Revenue Code. Unlike the New Jersey statute, there is no language in §

---

[35] Civ. No. 97-4283 (GEB), 1998 U.S. Dist. LEXIS 6672 (D.N.J. Feb. 24, 1998). That decision
was a direct appeal from a decision of this court, so in that instance this court would have
been bound by the ruling under the doctrine of law of the case (which is a distinct doctrine
from *stare decisis*). This court has enormous respect for the decisions of the District Court,
but that does not mean that its decisions constitute binding legal precedent in future cases.
[36] *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)

541(c)(2) that directs this court to determine if the accounts at issue were

*maintained* in accordance with federal law.

A more pertinent decision from the District Court of New Jersey on this issue

is *Hill v. Dobin*[37] in which the court examined the Third Circuit's decision in *In re*

*Yuhas*.[38] The court noted that:

> contrary to the interpretation of some bankruptcy courts, the *Yuhas*
> five-part test is not one of general applicability. Specifically, there is
> no requirement in § 541(c)(2) that the asset be qualified under Section
> 408 of the Internal Revenue Code. The *Yuhas* Court added that prong
> because the restriction on transfer upon which the debtor relied in that
> case—N.J.S.A. § 25:2–1(b)—applied only to qualifying trusts, defined in
> N.J.S.A. § 25:2–1(b) as "trust[s] created or qualified and maintained
> pursuant to ... section 408 ... of the federal Internal Revenue Code
> of 1986." *Yuhas*, therefore, does not suggest that for an asset to be
> excluded from a bankruptcy estate under § 541(c)(2) it must be
> qualified under Section 408 of the Internal Revenue Code. Rather,
> that requirement simply addressed whether the particular restriction
> on transfer applied to the asset at issue in *Yuhas*.[39]

Again, this court's finding that these retirement plans are not property of the estate

is not premised on *N.J.S.A.* § 25:2–1(b), so the court need not be concerned with

qualification under section 408 of the Internal Revenue Code.

The Trustee also relies on the Eleventh Circuit's decision in *In re Yerian*, but

that reliance is misplaced.[40] Similar to *Copulos*, the court in *Yerian* interpreted a

state exemption law and not the exclusion provision of § 541(c)(2) of the Code. The

Eleventh Circuit took issue with the bankruptcy court and district court's

assumption that a properly exempted IRA had to be maintained in accordance with

---

[37] 358 B.R. 130 (D.N.J. 2006)
[38] 104 F.3d 612 (3d Cir. 1997)
[39] *Hill v. Dobin*, 358 B.R. at 134–35
[40] 927 F.3d 1223 (11th Cir. 2019)

§ 408 of the IRC when that was not what the Florida exemption statute said. The

Florida exemption focused on whether the IRA has been maintained in accordance

with its own governing instrument, not on whether the IRA has been maintained in

compliance with § 408 of the IRC. The Eleventh Circuit then gave of examples of

situations in which the Florida exemption statute would likely allow a pensioner to

shield his retirement fund from creditors, even though the fund was not maintained

in compliance with the tax code.[41] Of particular interest for the case before this

court is the *Yerian* court's observation that its decision:

> is not guided by the Trustee's argument that it would be "absurd"
> or "inconsistent with the principles behind the bankruptcy code"
> for Florida law to have the effect of shielding even some IRAs
> operated in violation of federal tax law. This Court applies an
> "exacting standard for finding absurdity," lest we impose "the policy
> predilections of judges" on legitimate legislative choices.[42]

Likewise, this court's decision cannot be guided by the Trustee's argument that to

rule that these accounts are not available to creditors would be akin to "this Court's

imprimatur of the Debtor's bad faith and egregious conduct."[43]

    The Trustee urges this court to adopt what he refers to as the *Goldschein* line

of cases.[44] In *Goldschein*, the bankruptcy judge acknowledged that courts have

disagreed as to the meaning to be given to the words "ERISA-qualified" noting that

is not a term of art or defined in any of the relevant statutes. The court then went

on to state that it: "does not conclude that every plan which is governed by ERISA

---

[41] *In re Yerian*, 927 F.3d at 1230
[42] *Id.* at 1232 (internal citations omitted)
[43] Trustee Brief at 1 [Doc. 41]
[44] *In re Goldschein*, 244 B.R. 595 (Bankr. D. Md. 2000)

and contains the anti-alienation provision required by 29 U.S.C. §1056(d) must also

obtain tax qualification under 26 U.S.C. § 401 in order for a Debtor's benefits in

such plan to be excluded from the Debtor's estate in bankruptcy."[45] Despite that

acknowledgement, the *Goldschein* court concluded that for a pension plan, such as

the one before it, that was *intended* to be qualified under Section 401 of the Internal

Revenue Code  that: "It is apparent that … Congress intended the provisions of

ERISA and the provisions of the Internal Revenue Code to work in consort … [so] to

be entitled to the exclusion of benefits from the bankruptcy estate, the plan must

comply with provisions of both statutes."[46]

Unfortunately, the opinion does not make explicit why the intent of the party

that established an employee benefit plan has any relevance to Congressional intent

underlying § 541(c)(2). More importantly, that analysis was never tied back to the

language of § 541(c)(2). Since this court believes the analysis hinges on anti-

alienation provisions under ERISA rather than on a combination of ERISA and tax

qualification, the *Goldschein* analysis is inapposite. For those reasons, this court

must respectfully disagree with the holding in *Goldschein*.

On the whole, this court rejects the reasoning in the remaining cases cited by

the Trustee because they similarly run afoul of traditional canons of statutory

construction and the plain language approach to § 542(c)(2) set forth in *Patterson*.[47]

---

[45] *Id.* at 600

[46] *Id.* 600-01

[47] *See generally*, Litman, 9 Am. Bankr. Inst. L. Rev. at 652–555, 697 (concluding that additional IRC § 401(a) qualification is not required for section 541(c)(2) to apply); Sabino & Clark, "The Last Line of Defense: The New Test for Protecting Retirement Plans from Creditors in Bankruptcy Cases," 48 Ala. L. Rev. 613, 628–51, 668 (1997) (same).

Count One sought a declaratory judgment from this court that the retirement accounts were "not proper exemptions" due to the alleged operational defects, and thus were property of the bankruptcy estate. As previously noted, in Count One the Trustee bypassed the foundational question of whether the accounts ever came into the bankruptcy estate such that the accounts would need to be exempted out of the estate. Having found that the retirement accounts never came into the bankruptcy estate by operation of § 541(c)(2), the court never reaches the exemption issue. The court grants dismissal of Count One of the Amended Complaint. Given this ruling, the court need not address the Debtor's alternative argument that N.J.S.A. § 25:2-1(b) provides the restriction on transfer required by § 541(c)(2).

Count Two

Count Two of the Amended Complaint seeks a Preliminary Injunction and Temporary Restraining Order Against Further Distributions from the Retirement Accounts. This Count seeks the same relief as the Trustee's motion to impose a TRO and preliminary injunction filed on January 9, 2022.[48] After oral argument on that motion, this court entered an order that imposed temporary restraints on the withdrawal of any funds from the retirement accounts and scheduled a hearing on the request for a preliminary injunction for February 8, 2022. The January 11 order specifically provided that the "temporary restraints shall remain in place through

---

[48] Doc. 2

the conclusion of that hearing and entry of further order if warranted."[49] A

subsequent scheduling order provided: "The parties consent to maintain the *status*

*quo*, in accordance with the Court's order approving the Plaintiff's request for a

temporary restraining order on January 11, 2022, through and including the

Deadline or the date on which the Court renders a ruling with respect to the

Plaintiff/Trustee's Motion."[50] The parties engaged in mediation and the Debtor

consented to continue the *status quo* during that time.

In his brief in opposition to this motion, the Trustee states that: "in the event

this Court grants the Debtor's Motion to Dismiss in this action and overrules the

Objection, the Trustee will seek a motion to stay pending appeal on an expedited

basis to maintain the TRO while the Trustee appeals any ruling against the Trustee

in this exemptions litigation."[51] It is unnecessary for the Trustee to file that motion.

There is already a pending motion seeking identical relief. The standards for a stay

pending appeal and for a preliminary injunction are the same.[52] Given the agreed

upon *status quo*, this court has not needed to rule on the portion of the Trustee's

motion seeking a preliminary injunction; therefore, it will promptly schedule a

hearing on the requested relief. Should an appeal be filed, that hearing can

encompass both forms of relief. Until the court rules on that motion, the restraints

set forth in the January 11th Order and continued in the January 14th Order will

remain in place.

---

[49] Doc. 14
[50] Doc. 16
[51] Trustee Brief at 6 [Doc. 41]
[52] *In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015)

## Count Three

Count Three, which seeks a return of a preferential payment pursuant to 11 U.S.C. § 547(b), is conceptually flawed from the outset. The Trustee asserts that he seeks "to claw back the entire amount of $1,654,595.47 (the amount in the Retirement Accounts as of the Petition Date), from the Debtor."[53] The Trustee's theory is baffling because there is nothing to "claw back" into the bankruptcy estate. The amount sought to be brought back into the bankruptcy estate was, using the Trustee's own words, already "in the Retirement Accounts as of the Petition Date." Had this court found that the retirement accounts were property of the estate then a preference action would have been entirely unnecessary because the Plaintiff, in his role as the Chapter 7 trustee, would have control over those accounts.[54]

Even if Count Three were not conceptually flawed, the cause of action fails because the Amended Complaint does not establish the elements of a preference action under 11 U.S.C. § 547. That Code section allows a trustee to:

[A]void any transfer of an interest of the debtor in property –

(1) to or for the benefit of a creditor;

(2) for or an account of an antecedent debt owed by the debtor before such a transfer was made;

(3) made while the debtor was insolvent;

(4) made –

(A) on or within 90 days before the date of the filing of the petition; or

---

[53] Trustee Brief at 43 [Doc. 41]
[54] The Trustee contends that the Debtor has interfered with his control over the retirement accounts, but the Debtor's cooperation could have been compelled by motion.

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

To prevail, the Trustee must initially establish that a "transfer of an interest of the debtor in property" occurred. The court finds that the Amended Complaint does not sufficiently plead that there was a "transfer" or, if there was a transfer, that it was "of an interest of the debtor in property."

The Bankruptcy Code broadly defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property."[55] As the necessary "transfer" for purposes of § 547, the Trustee relies on what he refers to as the July 2020 DB Amendment. The genesis of that transaction is that by letter dated July 10, 2020, Northeast Professional Planning Group ("NPPG"), the third-party administrator for the 401(a) Defined Benefit Plan, advised the Debtor that his DB plan needed to be amended by July 31, 2020. The letter stated:

the Internal Revenue Service requires that all qualified retirement plans be restated - amended in full - every several years in order to keep up with changes in the law and in retirement plan administration practice. The restatement period for defined benefit plans like yours ends on July 31st, 2020.
When restating Plans, NPPG tries to keep the new document as faithful

---

[55] 11 U.S.C. § 101(54)

> as possible to the terms of the original. However, as the purpose of re-
> stating your Plan is to make the terms and administration procedures
> for your Plan up-to-date, certain provisions of your Plan will have changed.
> These changes are largely administrative in nature, and generally
> will not affect the form or mechanics of your Plan.[56]

According to the Amended Complaint, the most significant change brought about by the July 2020 DB Amendment was that it waived the requirement that to participate in the DB plan a participant had to provide one year of service to PSSoL and be over the age of 21.[57] Despite the undeniably broad definition of the term "transfer" in the Bankruptcy Code, the Amended Complaint still fails to connect the dots between the restatement of the DB Plan in July 2020 with the Debtor disposing of or parting with an interest in property.

The initial complaint did not directly address the transfer issue, it merely alleged that the July 2020 DB Amendment satisfied all of the elements of § 547(b). On the first Motion to Dismiss, the court questioned the Trustee's reliance on the July 2020 DB Amendment as the necessary "transfer" for purposes of § 547(b). Presumably in response to the court's concerns, the Amended Complaint now alleges that "The transfer from PSSoL, controlled by the Debtor, to his Ex-Wife in connection with the July 2020 DB Amendment is her 50% share of the Retirement Accounts in the amount of $827,297.73, which was in turn, awarded to the Debtor as part of the MSA. The Debtor's Ex-Wife was never an eligible employee of the DB Plan and 401(k) Plan and as a result, had no right to receive that money and in turn, award her share from PSSoL (controlled by the Debtor) to the Debtor as part

---

[56] Doc. 21-6
[57] Amended Complaint at para. 43

of the MSA."[58] If that convoluted statement is stripped of all extraneous facts, the

"transfer" the court is supposed to consider for purposes of § 547(b) is: "the transfer

from PSSoL[59] … to … Ex-Wife … [of] her 50% share of the Retirement Accounts."

The Trustee's argument fails to differentiate between entitlement to the funds in

the retirement accounts and the funds themselves.

There are no facts in the Amended Complaint that would permit this court to

infer[60] that prior to July 2020 the Debtor's ex-wife did not have a 50% share of the

retirement accounts. In fact, all the allegations of the Amended Complaint assert

the exact opposite.[61] The complaint alleges that prior to the Marriage Settlement

Agreement ("MSA"), incorporated into the Debtor and Julia Gilbert's divorce

judgment, the Debtor and Julia Gilbert each had a 50/50 share of the funds in the

retirement account. After the divorce, the Debtor was the 100% beneficiary of the

funds. Given that, it cannot be said that the Debtor (through PSSoL) disposed of or

parted with any property by signing the plan reinstatement in July 2020. Thus,

there was no "transfer" under the Code's definition.

The Trustee might have alleged in the complaint[62] that the MSA itself was a

voidable transfer because that transaction arguably diminished the assets available

---

[58] Amended Complaint at para. 146

[59] As discussed *infra,* if the transfer at issue is one by PSSoL then it is problematic that that corporation is not a party to this litigation.

[60] *McTernan v. City of York, PA*, 564 F.3d 636, 646 (3d Cir. 2009) (the court must take all properly pled facts and any inferences that may be made from those facts in the light most favorable to the plaintiff.)

[61] See, Amended Complaint para. 39 - 46

[62] The Trustee is under the mistaken impression that the Amended Complaint contains a count seeking to avoid the division of marital assets in the divorce as a preference or fraudulent transfer. It does not. *See*, Trustee Brief at 19-20 [Doc. 41]

to creditors by granting Julia Gilbert the exclusive right to the marital home (part of which would have been an estate asset) in exchange for her relinquishing her interest in the retirement accounts (which the court has found are not property of the estate). The Trustee never plead that the MSA was a preference or fraudulent transfer, and, because he did not appeal the order dismissing the case against Julia Gilbert with prejudice (including the fraudulent transfer count), he cannot amend to plead that now. The Trustee asserted in Count One that the Debtor treated the retirement accounts as "decorative bank accounts" and engaged in various prohibited transactions.[63] Yet Count Three does not seek to claw back any of those transactions; its sole focus was on the amendment of the DB Plan.

Ultimately, even if the July 2020 DB Plan Amendment was a "transfer" it did not diminish what was available to the Debtor's creditors and that is the touchstone of a preference action.

Count Three also fails because the transfer had to be "of an interest of the debtor in property." The Bankruptcy Code does not specifically define what constitutes "an interest of the debtor in property" for purposes of section 547. However, the United States Supreme Court has declared that the phrase "interest of the debtor in property" is coextensive with the term "property of the debtor" found in § 541(a)(1).[64]

In *Begier v. I.R.S.*, the Supreme Court held that certain tax payments the debtor made were not avoidable preferences under § 547(b) because the payments

---

[63] Amended Complaint para. 132
[64] *Begier v. I.R.S.*, 496 U.S. 53 (1990)

came from money held in trust that would not be considered property of the estate under section 541(d). The Court reasoned that "[b]ecause the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate — the property available for distribution to creditors — "property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[65] As one bankruptcy treatise explained the logic of the analysis:

> If the property transferred is not that of the debtor, the rationales for preference avoidance collapse. Maintaining intercreditor equality is a relevant concern only with regard to the debtor's property, for it is only out of that property that the debtor's creditors normally can expect to be paid. ... In short, the legal concern with preferences is not that one creditor of the debtor gets paid while others do not, but that the payment to that creditor is to the corresponding prejudice of other creditors.[66]

Applying that logic here, it cannot be a preference under section 547 if the funds that were allegedly transferred out of the estate were not estate funds.

Additional cracks in the Trustee's theory of Count Three become immediately apparent once the remainder of the elements of a preference cause of action are examined. Section 547(b)(1) requires that the transfer have been "to or for the benefit of a creditor." Paragraph 147 of the Amended Complaint alleges that the "July 2020 DB Amendment was made to or for the benefit of the Defendant Debtor." The Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor." Thus, by definition, the Defendant Debtor cannot be a creditor. This is not

---

[65] *Id.* at 58
[66] Charles Jordan Tabb, THE LAW OF BANKRUPTCY § 6.11 at 360 (1997)

a pleading problem that can be fixed by amendment because, at best, the Trustee could possibly allege that the July 2020 DB Amendment was made for the benefit of the Debtor's ex-wife, Julia Gilbert, but that avenue is now foreclosed because all claims against Julia Gilbert have been dismissed with prejudice.

The next infirmity with the Trustee's preference cause of action is that the Amended Complaint fails to properly plead § 547(b)(2)'s requirement that the transfer was "for or an account of an antecedent debt owed by the debtor before such a transfer was made." Paragraph 60 of the initial complaint stated that: "The July 2020 DB Amendment was for or on account of an antecedent debt owed by the Debtor to the Defendant Debtor before such transfers was made." Paragraph 148 of the Amended Complaint now alleges that the "July 2020 DB Amendment was for or on account of an antecedent debt owed by PSSol (and its predecessor companies) to the Defendant Debtor before such transfers was made." Inexplicably, when the Trustee substituted PSSoL for the Debtor in Count Three he did not add the corporation as a defendant. [67] But even if PSSoL had been a named party in this action, an antecedent debt owed by a corporation owned by the Debtor is not the same as a "debt owed by the debtor." That is significant because the Amended Complaint does not contain a count to pierce the corporate veil.

The Amended Complaint also fails to properly plead § 547(b)(3)'s requirement that the transfer was "made while the debtor was insolvent." The Bankruptcy Code

---

[67] In opposition to the first Motion to Dismiss, the Trustee argued that he could maintain a preference action against Julia Gilbert if he amended the complaint to name the Debtor's business PSSoL. Transcript of hearing on Feb. 22, 2022 at 13 [Doc. 28] It must be noted again that all causes of action against Julia Gilbert have been dismissed with prejudice.

defines "insolvent" as a "financial condition such that the sum of the entity's debts
is greater than all of such entity's property."[68] Paragraph 149 of the Amended
Complaint alleges that the "Debtor was insolvent at the time the July 2020 DB
Amendment." Aside from that conclusory statement,[69] the court could not find a
single factual allegation in the 51-page Amended Complaint regarding the Debtor's
assets or liabilities as of July 2020. Section 547(f) provides that "[f]or purposes of
this section, the debtor is presumed to have been insolvent on and during the 90
days immediately preceding the date of the filing of the petition." That section is
inapplicable here because the event at issue happened more than 90 days prior to
the filing of the bankruptcy petition. The court also notes that the Debtor was not
insolvent under the Code's definition on April 1, 2021 (the date he filed his
bankruptcy petition) because he listed assets of $1,682,400 and liabilities of
$589,790.

　　　Finally, the Amended Complaint fails to properly plead § 547(b)(5)'s
requirement that the transfer must have allowed the creditor to receive more than
the creditor would have if "the transfer had not been made" and the creditor
"received payment of such debt to the extent provided by the provisions of this title."
Self-evidently, if the retirement accounts are not property of the estate that may be
distributed to creditors those funds do not enter into the calculus of what a creditor
would have received if the transfer had not been made. So, this court's finding that

---

[68] 11 U.S.C. § 101(32)
[69] On a 12(b)(6) motion, the court is not required to accept conclusory statements or
formulaic recitations of the elements of a cause of action. *Davis v. Wells Fargo*, 824 F.3d
333, 341 (3d Cir. 2016)

the retirement accounts are not property of the estate means that the Trustee

cannot satisfy § 547(b)(5).

The Trustee attempts to salvage his preference cause of action by arguing

that the Debtor cannot "wash" the preference and fraudulent transfer claims by

having the MSA approved as part of the divorce. In support of that argument, the

Trustee relies on *In re KB Toys*[70] in which the Third Circuit held, in the claims

trading context, that when an assignor receives a voidable transfer and eventually

assigns or sells his or her claim, that liability travels with the claim to the assignee.

The court fails to see how that holding has any application to these facts. In his

opposition to this motion, the Trustee asserts that in *KB Toys* the Third Circuit

held "that the disallowance of a claim that was originally owned by a person who

received a voidable preference **that remains unreturned**, the preference liability on

the claim continues until the preference payment is returned, regardless of whether

the current claimholder holding the claim received the voidable transfer

payment."[71] Illogically, the Trustee is ignoring the fact that in this case – even if

there had been a transfer in July 2020 of Julia Gilbert's 50% interest in the DB

Plan - that interest was **returned** to the Debtor as part of the MSA.

For all the foregoing reasons, the motion is granted as to Count Three.

<u>Counts Four and Five</u>

These counts are based on actual or constructive fraudulent transfer

pursuant to section 548. These counts suffer from similar infirmities as Count

---

[70] 736 F.3d 247 (3d Cir. 2013)
[71] Trustee Brief at 43 (emphasis added)

Three. To prevail on these counts the Trustee would need to properly allege that there was a "transfer" and that the transfer was "of an interest in the debtor in property." For the reasons already discussed, that is not possible.

Count Five (constructive fraudulent transfer) also requires a finding that the debtor:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

There are no allegations in the Amended Complaint that address the Debtor's insolvency as of July 2020 or address whether the Debtor was engaging in business or incurring debt which he reasonably believed was beyond his ability to pay.

Accordingly, the motion is granted as to Counts Four and Five.

Count Six

Count Six is based on 11 U.S.C. § 544 and 11 U.S.C. § 550(a) and it is plagued by some of the same problems as the other counts. Section 544(b) provides that a "trustee may avoid any transfer of an interest of the debtor in property or any

obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502." Once again, it must be shown that there has been a "transfer of an interest of the debtor in property" and given this court's finding that the funds in the retirement plans are not property of the estate, the Trustee obviously cannot establish that.

The next hurdle is establishing if there is a creditor holding an unsecured claim into whose shoes the Trustee may step to exercise the "strong-arm powers" afforded a bankruptcy trustee through section 544. Such a creditor is typically referred to as a triggering creditor.[72] The trustee has the burden to demonstrate the existence of an actual creditor with an allowable avoidance claim.[73]

The Trustee attempts to use the IRS as the triggering creditor. The Trustee asserts that he "is empowered, through Section 6502(a)(1) of the IRC, to avoid and recover the transfers from PSSoL (and its predecessor companies) controlled by the Debtor, to the Debtor and his Ex-Wife pursuant to both Sections 544 and 550 of the Bankruptcy Code ten (10) years prior to the Petition Date."[74] Again, there is the problem that PSSoL is not a party to this litigation.

There is also the problem that the IRS is not listed as a creditor in the Debtor's schedules and the IRS has not filed a proof of claim in this case. The Trustee points to a case that held that a trustee may step into the IRS's shoes even

---

[72] 5 *Collier on Bankruptcy* ¶ 544.06[1] Richard Levin & Henry J. Sommer eds.-in-chief (16th ed. 2022)
[73] *In re Maxus Energy Corp.*, 2022 WL 2240122, at *48 (Bankr. D. Del. June 22, 2022)
[74] Amended Complaint at para. 167

if the IRS has not filed a proof of claim.[75] The court does not even get to the point of

evaluating whether it finds that case persuasive because there are no facts alleged

in the Amended Complaint that assert that the Debtor had an actual tax liability

during the 10-year period preceding filing. In other words, the Trustee is skipping

over the crucial step of alleging sufficient facts in the complaint to allow this court

to conclude that there is "a creditor holding an unsecured claim that is allowable

under section 502."[76]

The Trustee takes the position that he has alleged facts to support the

existence of a tax liability. He states that "the Trustee has pled facts that the

Debtor's Ex-Wife was not eligible to participate in either the DB Plan and the

401(k) Plan since the inception of plans. Accordingly, the Debtor will most likely

have tax consequences from April 1, 2011 to the Petition Date based on the Debtor's

Ex-Wife's ineligibility to participate in the retirement plans."[77] Accepting for the

purposes of this motion that the Debtor's ex-wife was ineligible to participate in

either retirement plan, that still does not establish that there would be 10 years of

tax liability. The statute the Trustee is relying on is 26 U.S.C. § 6502, which

provides that:

Where the assessment of any tax imposed by this title has been

---

[75] *Alberts v. HCA Inc. (In re Greater Southeast Cmty. Hosp. Corp. I)*, 365 B.R. 293 (Bankr.
D.D.C. 2006). *But see*, *Miller v. Fallas (In re J&M Sales, Inc.)*, 2022 WL 532721 (Bankr.
D.Del. February 22, 2022)("Since the IRS did not file a proof of claim (or even an informal
proof of claim) and the Debtors did not schedule an IRS claim, the Trustee cannot rely on
the IRS as a predicate creditor for the purposes of pursuing fraudulent conveyance claims
beyond the four-year lookback period provided in [Delaware's Uniform Fraudulent Transfer
Act]").
[76] 11 U.S.C. § 544(b)(1)
[77] Trustee Brief at 51 [Doc. 41]

> made within the period of limitation properly applicable thereto,
> such tax may be collected by levy or by a proceeding in court, but
> only if the levy is made or the proceeding begun--
> (1) within 10 years after the assessment of the tax

There are no facts alleged in the Amended Complaint relating to when tax returns were filed, if any tax was assessed, or what the applicable limitation periods would be. Generally, the IRS must assess a tax liability within three years of the date when the income tax return was filed.[78] So, it is possible that some of this alleged tax liability is beyond the relevant statute of limitations period.

Alternatively, the Trustee maintains that he has the right to file an avoidance claim against the IRS to recover the $11,000 that the Debtor paid the IRS in March 2020, which would then transform the IRS into a current creditor. This court cannot rule on the possible *bona fides* of an avoidance action that has not been filed, so that hypothetical situation is unhelpful to this analysis.

The bottom line is that even if the IRS is a legitimate triggering creditor all the accomplishes is providing the Trustee with a ten-year look back period for avoidable transfers. The only transfer the Trustee raised in the Amended Complaint is the July 2020 DB Plan Amendment and, for the reasons already discussed, that event it insufficient to support an avoidance action.

Accordingly, the Motion to Dismiss is granted as to Count Six.

<u>Request to further amend complaint</u>

The Trustee has requested that should the court find that any of the counts of the Amended Complaint are deficient that he be permitted a further opportunity to

---

[78] 26 U.S.C. §§ 6201–6207

amend. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Among the reasons for denying leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.[79] "A determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face."[80] Given the pervasive problems with this complaint, the court finds that further amendment would be futile. The court reaches that conclusion based both on the Trustee's faulty logic undergirding the avoidance counts, and on the fact that Julia Gilbert has been dismissed from the case with prejudice.

<u>Conclusion</u>

The Trustee rails against the injustice of allowing this Debtor to "leave[] his creditors in the wind, and begin a new life in Puerto Rico with almost $1.7 million." Such indignation is understandable; It would surely be preferable for a solvent debtor to choose to pay his creditors. But the stark reality is that outside of bankruptcy Mr. Gilbert's creditors would not have access to the funds held in these retirement accounts. The court acknowledges the Trustee's significant efforts to manufacture something for creditors out of essentially a no-asset case, but it is not the purview of this court to create bad faith exceptions to the protections that

---

[79] *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997)
[80] *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)

Congress has granted retirement funds both inside and outside of bankruptcy. This court firmly believes that "if there are to be any changes in the language of § 541(c)(2) such changes must be made by Congress, not by the courts."[81] As the Supreme Court recently held in *Law v. Siegel*, "it is not for courts to alter the balance struck by the [Bankruptcy Code]."[82] Like the decision in *Law v. Siegel,* this result may not be good for trustees (and by extension Mr. Gilbert's creditors) but that does not give this court the authority to alter the language of the Bankruptcy Code to better accommodate the Trustee's idea of justice.

     The Motion to Dismiss is granted in its entirety. The court will enter an order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
United States Bankruptcy Judge

Dated: August 22, 2022

---

[81] *In re Adams*, 302 B.R. 535, 546 (B.A.P. 6th Cir. 2003)
[82] *Law v. Siegel*, 571 U.S. 415, 427 (2014)